UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EDWARD HENRIES,

          Petitioner,

    v.                                                       23-CV-750-LJV
                                                           DECISION & ORDER
JEFFREY SEARLS,

          Respondent.

_____

        Edward Henries has been detained in the custody of the United States Department of Homeland Security ("DHS") since April 2022. Docket Item 1 at ¶ 11. On July 26, 2023, he filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241,[1] Docket Item 1, and moved for a temporary restraining order ("TRO") staying his removal while the Administrative Appeals Office ("AAO") of the United States Citizenship and Immigration Services ("USCIS") considered an appeal of his application for a certificate of citizenship, Docket Item 2. In brief, Henries argued that the government could not deport him while his appeal was pending before the AAO. Docket Items 1-2.

        In August 2023, the government moved to dismiss the petition, Docket Item 8, and the parties briefed Henries's motion for a TRO and the government's motion to dismiss, Docket Items 7, 9-11. Then, on October 17 and 18, 2023, the government informed the Court that the AAO had dismissed Henries's appeal, Docket Item 12, and that United States Immigration and Customs Enforcement ("ICE") intended to remove

---

[1] 28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).

Henries the following month, Docket Item 14.  The government asserted that Henries's petition was moot following the dismissal of his appeal, Docket Item 12, but Henries responded that there still was a live case or controversy, Docket Item 13.  The government then moved to dismiss the complaint on mootness grounds, Docket Item 16, and the parties briefed that issue, Docket Items 16-1, 17, 18.

For the following reasons, Henries's petition is dismissed and his motion for a TRO is denied as moot.

## FACTUAL AND PROECDURAL BACKGROUND[2]

Henries is a native of Liberia.  Docket Item 1 at ¶ 9; Docket Item 1-1 at 2.  He entered the United States in 1984.  Docket Item 1 at ¶ 9; Docket Item 1-1 at 2.

In October 2009, DHS issued a "Notice to Appear," charging that Henries was subject to removal from the United States under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101-1537.  *See* Docket Item 1-1 at 3.  More specifically, DHS charged that Henries was subject to removal under section 1227(a)(2)(B)(i) for having been convicted of a controlled-substances offense; section 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony, namely illicit trafficking in a controlled substance, *see id.* § 1101(a)(43)(B); section 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony, namely a conspiracy to illicitly traffic in a controlled substance, *see id.* § 1101(a)(43); and section 1227(a)(2)(A)(ii) for having been convicted of at least two crimes of moral turpitude at any time after his admission.  *See* Docket Item 1-1 at 1.

---

[2] The following facts are taken from the parties' filings.

On June 20, 2011, Henries was ordered removed from the United States. Docket Item 1-1. He appealed that decision, first to the Board of Immigration Appeals and then the United States Court of Appeals for the Third Circuit, but he was unsuccessful: The Third Circuit ultimately dismissed Henries's appeal in May 2012. *See* Docket Item 1 at ¶ 10.

On or about April 29, 2022, Henries was released from prison and transferred into ICE custody. *Id.* at ¶ 11. A few days later, he filed a Form N-600, *i.e.*, an Application for Certificate of Citizenship, with USCIS. *See id.* at ¶ 12; Docket Item 1-3 at 1. In that application, Henries argued that he "acquired United States citizenship at birth through [his] adoptive mother." *See* Docket Item 1 at ¶ 12; Docket Item 1-3 at 1. In early 2023, USCIS denied Henries's application and Henries appealed that decision to the AAO. Docket Item 1 at ¶ 12; Docket Item 1-4.

On July 26, 2023, Henries learned that "officials at the Buffalo Federal Detention Facility were attempting to remove [him] from the United States." Docket Item 1 at ¶ 14. So later that day, he commenced this action under 28 U.S.C. § 2241 and moved for a TRO preventing his removal, arguing that he could not be removed while the appeal of his citizenship application was pending. *See* Docket Items 1-2.

In his petition, Henries "ask[ed] this Court to review whether ICE has the legal authority to remove [him] pursuant to a valid removal order without first affording him the opportunity to have his claims heard by the [AAO]." Docket Item 1 at ¶ 15. He asserted that he "d[id] not challenge the removal order directly"; rather, he argued that he could not be deported before the AAO decided the appeal of the denial of his citizenship application. *Id.* at ¶¶ 15-18. According to Henries, removing him while the appeal was

3

pending would violate the Due Process Clause and the Administrative Procedure Act ("APA").  *Id.* at ¶¶ 19-22.

The petition included several requests for relief.  *Id.* at 8.  Henries asked the Court to (1) grant his petition and order an "immediate release from custody" or, in the alternative, "order a constitutionally adequate [bond] hearing," *id.*; (2) order the government "to refrain from transferring [Henries] out of the jurisdiction of the ICE Buffalo Field Office Director during the pendency of these proceedings and while [Henries] remains in [] custody," *id.*; and (3) order a hearing on Henries's motion for a TRO, *id.*, which asked the Court to "enjoin[] ICE from removing [] Henries from the [United States] and order[] his release from custody during the pendency of the AAO appeal," Docket Item 2 at 4.[3]

The government moved to dismiss Henries's petition.  Docket Item 8.  But before this Court could decide the motion to dismiss, the AAO dismissed Henries's appeal.  *See* Docket Item 12.  The government then moved to dismiss Henries's petition as moot, Docket Item 16, and the parties briefed that motion as noted above.

## DISCUSSION

**I.   MOOTNESS**

"Article III of the United States Constitution provides that the judicial power of the United States extends to certain 'cases' and 'controversies.'"  *Stagg, P.C. v. U.S. Dep't of State*, 983 F.3d 589, 601 (2d Cir. 2020).  The "uncontroverted core" of Article III's

---

[3] During a status conference on July 28, 2023, the government "confirmed [Henries] was not going to be deported imminently" and agreed to provide the Court with at least five days' notice in advance of the removal date.  Docket Item 6.

cases-and-controversies limitation is "the principle that, at all times, the dispute before the court must be real and live, not feigned, academic, or conjectural." *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of Watervliet*, 260 F.3d 114, 118 (2d Cir. 2001). So "[w]hen the issues in dispute between the parties are no longer 'live,' a case becomes moot and the court . . . loses jurisdiction over the suit, which therefore must be dismissed." *Lillbask v. Conn. Dep't of Educ.*, 397 F.3d 77, 84 (2d Cir. 2005) (internal citations and quotation marks omitted).

The government contends that Henries's petition and this action are now moot. Docket Item 16-1. More specifically, it says that Henries's "entire case is based on an allegation that his removal from the United States during pendency of his AAO appeal would deprive him of due process or rights he believes he has under the APA." *Id.* at 2. Because Henries's appeal is no longer pending, the government argues, the controversy he asked this Court to address—whether the government had the authority to remove him while the appeal was pending—"no longer exists, and this Court lacks subject matter jurisdiction over this action." *Id.* at 2-3; *see id.* at 4 ("[Henries] sought relief to avoid a result which can no longer occur—removal from the United States prior to the adjudication of his appeal to the AAO.").

The government is correct in one respect: The petition's focus—the request for an order preventing the government from removing Henries while his appeal to the AAO was pending, *see* Docket Item 1 at 8—is necessarily moot now that Henries's appeal has been dismissed.[4] But Henries also asked this Court to order his release or,

---

[4] For that reason, Henries's motion for a TRO, which sought an order staying his removal during the pendency of the appeal, *see* Docket Item 2, is denied as moot.

5

alternatively, a "constitutionally adequate [bond] hearing" to "justif[y]" his continued detention.[5]  *See id.*; *see also* Docket Item 17 at 2.  That request is not moot.

Henries's continued detention thus presents a "real, live" issue.  *See Russman*, 260 F.3d at 118; *see also Flores-Torres v. Mukasey*, 548 F.3d 708, 712 (9th Cir. 2008) (noting that the "the government's position that an individual who asserts a non-frivolous claim of citizenship can be detained during immigration proceedings . . . without habeas review" presented "serious questions").  And the Court now turns to that issue.

## II.    THE HABEAS PETITION

Henries says that he should be released because he is a United States citizen and because he is entitled to a hearing.  *See* Docket Item 17; *see also* Docket Item 1 at 8.  Both arguments lack merit.

### A.    Request for Release Based on Citizenship Claim

To begin, the Court lacks jurisdiction to consider any argument that Henries must be released because he is a United States citizen.

The Real ID Act of 2005, 8 U.S.C. § 1252, strips district courts of jurisdiction to review a final order of deportation.  *See De Ping Wang v. Dep't of Homeland Sec.*, 484

---

[5] The government argues that this Court should not find a live case or controversy based on Henries's request for immediate release because the petition sought Henries's release only during the pendency of his appeal.  Docket Item 18 at 2-3; *see id.* (arguing that Henries's request for release following the dismissal of his appeal is "essentially an attempt to amend the [p]etition").  There may be some merit to that argument:  When viewed together, the petition and the motion for a TRO certainly suggest that the request for release contemplated that relief in the context of the then-pending AAO appeal.  *See generally* Docket Items 1-2.  Nevertheless, the Court broadly construes the petition to request immediate release regardless of the status of Henries's appeal.  *See* Docket Item 1 at 8; Docket Item 17 at 4.

6

F.3d 615, 615-16 (2d Cir. 2007).  That jurisdictional bar prevents a district court from reviewing either a direct or an indirect challenge to an order of removal.  *See, e.g.*, *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (finding that section 1252 stripped the district court of jurisdiction to hear an action seeking adjudication of an I-212 application for permission to reapply for admission because it was an indirect challenge to an order of removal).

Here, Henries is subject to a final order of removal.  His citizenship claim indirectly challenges that order.  *See Gordon v. Herron*, 2009 WL 909640, at *3 (W.D.N.Y. Mar. 31, 2009) (noting that the district court "can consider only issues surrounding [the petitioner's] continued detention and should not address his derivative citizenship contentions" (emphasis omitted)); *cf. Ramos Funez v. Sessions*, 2019 WL 4451484, at *9 (W.D.N.Y. Sept. 17, 2019) (finding that section 1252 was not a jurisdictional bar where no final order of removal had been issued because the petitioner "cannot, as a practical matter, challenge a non-existent final order of removal"); *Flores-Torres*, 548 F.3d at 711 (holding that district court had jurisdiction to hear action asserting citizenship claim because the action challenged the petitioner's detention "prior to the issuance" of a final order of removal); *Lopez v. Doe*, 2023 WL 4418604, at *2, *4-5 (E.D. Va. July 10, 2023) (finding that section 1252 did not bar district court review of petitioner's citizenship claim because petitioner was "not subject to a final order of removal").  And Henries's argument that the APA provides an independent basis of jurisdiction, Docket Item 17 at 5, is squarely foreclosed by Second Circuit precedent.  *See Delgado*, 643 F.3d at 55-56 (rejecting plaintiff's attempt to "evade the restrictions of section 1252(a)(5) by styling her challenge" regarding

adjustment of her immigration status as a mandamus action or an action arising under the APA).

Section 1252 therefore precludes this Court from considering the argument that Henries's detention is unlawful because he is a United States citizen.

### B.     Right to Release Under 8 U.S.C. § 1231

To the extent Henries argues that his detention has become unconstitutionally prolonged, that argument also fails.

The government correctly notes that Henries "is detained pursuant to 8 U.S.C. § 1231." Docket Item 16-1 at 4-5 n.2; *see Hechavarria v. Sessions*, 891 F.3d 49, 54-55 (2d Cir. 2018) (explaining that section 1231 governs detention of noncitizens "facing deportation"). Henries does not explicitly dispute that he is held under that section, despite his contention that he is a United States citizen. *See* Docket Item 17.

Under section 1231, it is "presumptively reasonable" for the government to detain a noncitizen for up to six months. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). But after the six-month period has expired, if a noncitizen shows "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," then the burden shifts to the government to rebut that evidence. *Id.* If the government cannot meet that burden, the noncitizen must be released. *Id.* at 699 ("[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute.").

As the government noted in its first motion to dismiss, Henries "has not addressed the length of his detention or the likelihood of his removability." Docket Item 8-1 at 4. In response to the first motion to dismiss, Henries only asserted that execution

8

of the removal order while his AAO appeal was pending would violate his rights, Docket Item 10 at 3-11—an argument that is moot now that the appeal has been dismissed.

Moreover, Henries has not shown that his removal is not reasonably foreseeable. On the contrary, the government has informed the Court that ICE intends to remove Henries sometime this month. Docket Item 14. Because Henries has not demonstrated that there is good reason to believe his removal is not reasonably foreseeable, *see Zadvydas*, 533 U.S. at 701; *see* Docket Items 1-2, 9-10, 13, 17, he is not entitled to relief based on the length of his detention.

### C.   Section 1503

Next, the parties debate the impact of 8 U.S.C. § 1503, Docket Item 17 at 2-4; Docket Item 18 at 2-4, which provides:

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action . . . for a judgment declaring him to be a national of the United States, except that no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with[,] any removal proceeding under the provisions of this chapter or any other act, or (2) is in issue in any such removal proceeding.

8 U.S.C. § 1503; *see Ramos Funez*, 2019 WL 4451484, at *5 (noting that if "the AAO affirms USCIS's denial [of an appeal of a Form N-600," the individual claiming citizenship "will be deemed to have exhausted his administrative remedies and may file an action for a declaratory judgment in a United States district court under 8 U.S.C. § 1503(a)").

The government has suggested that Henries can pursue his citizenship claim through an action under section 1503.[6]  *See* Docket Item 8-1 at 4-5 n.2.  Henries says that he intends to file a section 1503 action "forthwith,"[7] Docket Item 17 at 2 n.1, but he also says that section 1503 cannot provide the relief he seeks here.  More specifically, Henries argues that because he cannot challenge his detention through an action under section 1503, this Court cannot dismiss the petition challenging his detention.[8]  *Id.* at 2-6.  So, Henries says, his petition seeks "relief from final agency action from which there is no adequate remedy in a court."  *Id.* at 2, 5-6.

Henries seems to present his section 1503 argument as an additional basis on which to find a live case or controversy.  *See* Docket Item 17 at 4 (arguing that because Henries cannot pursue an unlawful detention claim through a section 1503 action, his

---

[6] Henries may not pursue an action under section 1503 "if the issue of [his] status . . . arose by reason of . . . any removal proceeding" or if it "is in issue in any such removal proceeding."  8 U.S.C. § 1503.  So it is unclear whether he can assert a claim under section 1503.

[7] Henries has not filed a section 1503 action in the more than six weeks since the AAO dismissed his appeal.

[8] In support of that argument, Henries cites *Axon Enterprise, Inc. v. FTC*, 143 S. Ct. 890 (2023), in which he says the Supreme Court "opined that an allegation of unconstitutional agency authority in the form of ICE's detention of an American citizen[] is a 'here-and-now' injury that must be heard in the District Court 'because otherwise, any review of such constitutional claims would come too late to be meaningful.'"  Docket Item 17 at 5.  That is a mischaracterization of *Axon*, which was not about immigration or United States citizenship at all:  *Axon* addressed whether district courts have jurisdiction to hear suits challenging the constitutionality of enforcement actions by the SEC and FTC.  143 S. Ct. at 897.  But the Court understands that Henries likely was attempting to use *Axon* to support his argument that the district court has authority to review allegedly unconstitutional agency action.  *See Lopez*, 2023 WL 4418604, at *10 (noting that "the *Axon* Court emphasized that the plaintiff's claims could be heard in district court because otherwise, any review of such 'constitutional claims would come too late to be meaningful'" (quoting *Axon*, 143 S. Ct. at 904)).

10

request for immediate release presents "an existing controversy"); *id.* at 5 (arguing that because "there is no other adequate remedy" to address the government's allegedly illegal detention of Henries, the petition "is not moot" (citation omitted)).  The government, on the other hand, treats section 1503 as another reason that this Court should not consider Henries's citizenship claim.  *See* Docket Item 18 at 2-4 (arguing that an action under section 1503 is part of one of two permissible routes through which an individual may pursue a claim that he is a United States citizen, and that Henries cannot "litigate his citizenship claim in this Court").

Neither argument impacts the outcome of this case.  The Court already has determined that this action is not moot, *supra* at 4-6, so it need not address Henries's claim that section 1503 affects the mootness analysis.  Likewise, this Court already has determined that it lacks jurisdiction to order Henries's release based on his citizenship claim, *supra* at 6-8, so it need not consider whether section 1503 provides additional support for the government's argument on that point.

For those reasons, section 1503 does not change the Court's analysis of Henries's petition.

### D. Suspension Clause

Finally, Henries asserts that dismissal of his petition would violate the Suspension Clause because there is no "adequate and effective" substitute for habeas relief here.  Docket Item 17 at 5-6 (quoting *Boumediene v. Bush*, 553 U.S. 723 (2008)). But as the government notes, Henries "has two adequate substitutes for habeas corpus relief: the filing of an N-600 and the relevant appellate review, and a filing of a motion to reopen and then a [p]etition for [r]eview before a circuit court, if necessary."  Docket

Item 18 at 7; *see id.* at 3, 5-6. Dismissal of the petition therefore does not violate the Suspension Clause. *See Luna v. Holder*, 637 F.3d 85, 93 (2d Cir. 2011) ("[T]he substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus." (citation omitted)).

## **ORDER**

In light of the above, IT IS HEREBY

ORDERED that the government's first motion to dismiss, Docket Item 8, is GRANTED and Henries's petition, Docket Item 1, is DISMISSED; and it is further

ORDERED that Henries's motion for a temporary restraining order, Docket Item 2, and the government's second motion to dismiss, Docket Item 16, are DENIED as moot; and it is further

ORDERED that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: November 9, 2023
       Buffalo, New York

                                         */s/ Lawrence J. Vilardo*
                                         LAWRENCE J. VILARDO
                                         UNITED STATES DISTRICT JUDGE